AMERICAN GRAPHOPHONE CO. v. GIMBEL BROS.

(Circuit Court of Appeals, Second Circuit. February 20, 1917.)

No. 157.

PATENTS ⊙⇒328—VALIDITY AND INFRINGEMENT—SOUND RECORD.
   The Macdonald patent, No. 714,651, claim 6, for a sound record for talking machines, construed, and *held* not infringed.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in equity by the American Graphophone Company against Gimbel Bros. Decree for defendants, and complainant appeals. Affirmed.

For opinion below, see 234 Fed. 361.

Appeal from so much of a decree in equity, entered in the District Court, as dismissed a bill for alleged infringement of claim 6 of Macdonald patent, No. 714,651. The patent in suit relates to "recording and reproducing sounds," and the sixth claim is as follows:

"A sound record consisting of a tablet having a sound groove with undulations of varying depths, said undulations being of such lengths that sounds occupying one minute in their production form a record approximately 44 meters in length."

S. T. Cameron, of Washington, D. C., for appellant.
Frederick P. Fish, of New York City, for appellees.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

HOUGH, Circuit Judge. The alleged infringement herein is a large disc record used in phonographs, victrolas, or other machines of that nature. Reading the claim upon such a record, each disc is a "tablet" bearing the familiar groove with "undulations of varying depth" (or amplitude). Since the discs are of considerable diameter, and propelled for reproductive purposes beneath the stylus at a uniform rate of revolution, the outer coils of the helical sound groove pass underneath the style at the rate of 44 meters a minute or more. Infringement is said to result because a part of the disc travels under the style at the rate per minute of "approximately 44 meters."

Macdonald's specification relates to a method of manufacturing sound records. His thought was that the recording stylus should be set at such an angle, and the material cut moved at such speed thereunder, as to minimize or prevent the contact of the heel of the style with the material in or on which sound recording undulations had just been engraved. He states his principle as follows:

"The speed imparted to the record tablet should be such that the crest of each undulation moves from under the recording-style so rapidly that the heel of the latter at no time makes contact with the recording material."

He concludes (as the result of experiment) that this principle was best embodied by "imparting to the tablet during the recording operation a surface speed" of "about 44 meters per minute"; the recording style

⊙⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

being set at the proper angle. That recording and reproducing should —indeed, must—be at the same rate of revolution was assumed. The claim in suit is for the product of the process above summarized.

It is urged that whether the alleged infringements are produced by or in accordance with all the details of the process or not is immaterial, because the product being per se patentable must be protected under the sixth claim, no matter whether a later manufacturer has or has not found another and better way to manufacture the product. It is not necessary to dwell on this point, for we shall inquire whether the claim in suit covers such discs as are here complained of, irrespective of the method or process of their production.

It is common knowledge that for many years sounds have been recorded on and reproduced from two forms of records, the cylindrical and circular, and also that a prime requisite for agreeable and successful sound reproduction is that the recording and reproducing rates of operation shall be as nearly alike as is commercially possible. It is clear that the revolution of a cylinder at a uniform rate of speed will pass its material (whether recording or reproductive) under the style at a uniform rate of travel, while the revolution of a circular disc at the same uniform speed will produce a rate of travel under the style varying with the distance of the style itself from the disc center. Long before Macdonald filed his application, means had been provided for so varying the revolution of the circular disc as to make the rate of travel under the style uniform. That method of operation never came into use, because it was not worth while to complicate phonographs therewith. Such was the state of the art when application filed.

In the specification the process is described only with reference to a cylindrical disc; the only product referred to is likewise cylindrical, but it is said that the invention "may be practiced with a flat or a cylindrical tablet." This is obviously true, if the circular record be propelled at a uniform rate of travel under the style; whether the patent has any relation to such records used with a uniform rate of revolution is the question in this case.

The object of the patentee was not merely to avoid contact between the heel of the style and undulations once made, but to obtain a clean and perfect series of undulations recording and reproducing sound, in a manner impossible if the crests of the undulations were blurred or disfigured by heel contact. Therefore mere reading of the specification teaches that 44 meters per minute is not a thing desirable in itself, but it is made the foundation of this claim because that approximate speed and none other produces the best record, and (what is more important for legal purposes) the record of the patent.

The discs complained of are designed for the commercial machine, whose table revolves at a uniform rate; therefore they were manufactured at substantially the same uniform rate of revolution. They become infringements only because they are large enough to cause their outer groove coils to pass under the style at 44 meters or more per minute; in other words, they become Macdonald's records for perhaps a few seconds of their expected and intended use. If such a disc infringes, it must be held that the patentee intended to claim and cover

a method and product, which violated the teaching of his disclosure. He said 44 meters was the speed discovered by him to be best; but this plaintiff says a speed varying, e. g., from 20 to 60, produces infringement, because it crosses 44.

This, to say the least, is not persuasive; but the argument further implies that what is claimed to infringe is exactly what the patentee sought to avoid—i. e., a record produced and reproducing at a rate of less than 44. That rate was and is the virtue in the patent; and nothing desirable, nothing that Macdonald wanted, can result from a momentary use of that critical speed. Uniformity in rate of travel under the style is the only possible method or manner of obtaining anything useful out of Macdonald's disclosure, and of course no patent should be so read as to render the thought revealed thereby useless.

If the application herein had said in so many words, I assign as the basis of my invention the process and result of so revolving a tablet under a style that all or any part of said tablet moves thereunder at the rate of 44 meters per minute, the applicant should and would have been told that he showed nothing useful and nothing new. We decline to construe the claim as applicable to a product not made and used at a uniform rate of revolution under the style. As so construed, there is no infringement; on the validity of the claim, properly construed, we make no finding.

Decree affirmed, with costs.